911 P.2d 227

STATE of New Mexico,
Plaintiff–Appellee,

v.

Stephen C.M. LONG, Defendant–
Appellant.

No. 15917.

Court of Appeals of New Mexico.

Nov. 14, 1995.

Certiorari Denied Jan. 23, 1996.

Tom Udall, Attorney General, Jerome Marshak, and Theresa Welch, Assistant Attorneys General, Santa Fe, for Plaintiff–Appellee.

Ron Koch, Albuquerque, for Defendant–Appellant.

## OPINION

PICKARD, Judge.

1. Defendant appeals his convictions for one count of attempt to evade or defeat tax contrary to NMSA 1978, Section 7–1–72 (Repl.Pamp.1995) and one count of false statement and fraud contrary to NMSA 1978, Section 7–1–73 (Repl.Pamp.1995). Defendant raises twenty-one issues on appeal. We affirm. Only those portions of this opinion dealing with issues unique to the criminal tax laws merit publication; our discussion of routine criminal law issues will not be published.

### Facts

2. Defendant, an attorney, specialized in bankruptcy law. Between January 1987 and December 1990, Defendant was the sole shareholder and director of a professional corporation, Long Law Firm, P.A. (hereinafter referred to as the Corporation). Defendant owned all of the Corporation's stock, was the only lawyer employed by the Corporation, and was the sole person responsible for filing gross receipts tax reports. From 1987 through 1990, the Corporation had taxable gross receipts of just under $400,000, for which no tax reports were filed. During 1990, the Corporation had gross receipts in excess of $95,000, for which Defendant admitted that no gross receipts reports were filed and no taxes were paid. Defendant was charged and convicted under Count 3 of the indictment of evasion of gross receipts taxes for the 1990 tax year.

3. For the 1988 tax year, Defendant filed a personal income tax return. The return was prepared by Roberto Martinez, a certified public accountant, relying completely on W–2 forms provided to him by Defendant. The W–2 forms showed that $1193 had been withheld from income earned by Defendant and his wife for payment of state taxes. Accordingly, the return Defendant signed indicated a tax liability of $810 and a total of $1193 paid to the State for a refund of $383. Defendant admitted that neither he nor his corporation paid over to the State any money toward state income taxes or withholding during 1988. Defendant was charged and convicted under Count 6 of the indictment of false statement and fraud for filing the false 1988 tax return.

### Issues 1 and 2

4. On Count 3, Defendant was convicted under a statute which proscribes "willfully attempt[ing] to evade or defeat any tax or the payment thereof." Section 7–1–72. The indictment charged Defendant with "willfully attempt[ing] to evade or defeat the payment of ... [t]ax ... by willfully failing and refusing to file the tax returns and pay the taxes." Relying on federal cases, e.g., *United States v. Mal*, 942 F.2d 682 (9th Cir.1991), Defendant contends that there are two ways to violate the statute: (1) evading the assessment of the tax; and (2) evading the payment of the tax. Defendant further contends that although the charge in the indictment was for evasion of payment of tax, the allegations made and the evidence presented were based on evasion of assessment of tax, and even that proof was insufficient to support a conviction for tax evasion.

5. Defendant specifically argues that the evidence was insufficient to show that he committed either of the two possible violations of the statute. He maintains that there was no prior assessment of the tax and, without such assessment, there could be no failure to pay the tax. In addition, Defendant claims that evidence showing that he failed to file tax returns was insufficient to prove tax evasion because, under federal case law, mere failure to file tax returns without an additional affirmative act is not enough to support a conviction for evasion, and there was no evidence of such an affirmative act in this case.

6. We first decide whether there was sufficient evidence to support Defen-

dant's convictions under our state statute. If the meaning of a statute is clear, it is to be applied as written. *See State ex rel. Helman v. Gallegos,* 117 N.M. 346, 347, 352, 871 P.2d 1352, 1353, 1358 (1994). The express language of Section 7–1–72 prohibits a willful attempt to defeat a tax or the payment of a tax. A reasonable interpretation of Section 7–1–72 is that it covers all willful attempts to evade taxes, including willful failure to file returns if that results in evasion of taxes and willful failure to pay taxes required by New Mexico law if that is motivated by an intent to evade. As we discuss below, there was ample evidence to show that Defendant willfully failed to file tax returns resulting in intentional evasion of payment of taxes, thus violating our statute. Therefore, we need not decide whether there is another distinct way to violate our statute. The language of our statute is clear; there need not be a prior assessment of taxes before a defendant may be convicted of evasion of payment of taxes.

■ 7. New Mexico courts follow federal law only to the extent they find that law persuasive. *State v. Gutierrez,* 116 N.M. 431, 436, 863 P.2d 1052, 1057 (1993); *Carrillo v. Rostro,* 114 N.M. 607, 617 n. 9, 845 P.2d 130, 140 n. 9 (1992). We have previously rejected a defendant's contention relying on federal law in a tax case because that law was not persuasive notwithstanding the similarity of state and federal tax statutes. *See State v. Martin,* 90 N.M. 524, 526, 565 P.2d 1041, 1043 (Ct.App.), *cert. denied,* 90 N.M. 636, 567 P.2d 485 (1977), *overruled on other grounds by State v. Wilson,* 116 N.M. 793, 796, 867 P.2d 1175, 1178 (1994).

8. The evidence showed that Defendant was an attorney who was knowledgeable about state taxes. Defendant admitted that he knew he was required to pay gross receipts taxes every month. Defendant was solely responsible for filing gross receipts tax reports. For 1990, gross receipts taxes on approximately $95,508 were due from the Corporation. Defendant collected gross receipts tax from his clients or sought gross receipts tax in those cases where approval of the Bankruptcy Court was required. Defendant himself testified that during the four-year period that included 1990, he did not file any gross receipts tax returns and paid no gross receipts taxes. During 1991, Defendant had a partner, Donald Cox, who testified that he and Defendant decided not to file gross receipts tax reports. This evidence is sufficient to show that Defendant willfully failed to file returns and pay taxes and thereby willfully evaded the payment of taxes in violation of Section 7–1–72.

■ 9. Defendant also argues that our statute should be interpreted in the same manner as the federal statute in another way. Defendant contends that, applying federal case law, failure to file or pay taxes alone is not sufficient for conviction under our statute. He contends, relying on *Sansone v. United States,* 380 U.S. 343, 351, 85 S.Ct. 1004, 1010, 13 L.Ed.2d 882 (1965), and *Spies v. United States,* 317 U.S. 492, 497–98, 63 S.Ct. 364, 367–68, 87 L.Ed. 418 (1943), that he must have committed an affirmative act in furtherance of evasion of taxes. As above, we do not find these cases helpful in interpreting our statute.

10. The federal statutes have two sections—one that covers the mere failure to file returns or pay taxes and another that covers the evasion of taxes. *See* 26 U.S.C. § 7201 (1988) (willful attempt to evade or defeat tax or payment thereof); 26 U.S.C. § 7203 (1988) (willful failure to pay estimated tax or tax, make returns, keep records, or supply information). New Mexico, on the other hand, has only one statutory section to cover criminal tax violations.

11. The two sections of the federal statute referred to above are very similar. Both sections require willful behavior. It is clear from the federal case law that the federal courts struggled to come up with a distinction between the two statutes and that struggle resulted in requiring an affirmative act for violation of Section 7201. *See, e.g., Mal,* 942 F.2d at 684 (Section 7201 requires a willful commission in addition to a willful omission; however, a prior, concomitant, or subsequent false statement may raise a violation under Section 7203 to a violation under Section 7201). We are not persuaded that the distinction made by the federal courts between the statutory sections is helpful in

interpreting our statutory scheme. We therefore hold that, in order to support a conviction, our statute does not require an affirmative act, in addition to a willful failure to file a return, when that failure is motivated by an intent to evade taxes.

12. Defendant also claims that there was no evidence that he willfully failed to file tax returns. However, the evidence recited above is sufficient to support the jury's conclusion that Defendant's actions were willful with respect to his failure to file returns. *See State v. Motes,* 118 N.M. 727, 729, 885 P.2d 648, 650 (1994) (intent is rarely established by direct evidence and almost always inferred from other facts); *Martin,* 90 N.M. at 527, 565 P.2d at 1044 ("absence of procedures and the lack of method of doing business shows a conscious pattern of reckless disregard of any obligation to comply with the law and consequently a reasonable inference of intent not to pay or correctly report proper taxes").

### Issue 6

■ 13. Defendant claims that the tax return referred to in Count 6, charging false statement and fraud, was properly prepared as a matter of law and therefore not false or fraudulent. He contends that, because $1193 in state income tax was withheld from his pay checks, he could properly claim that amount on his personal tax return as a credit against his tax liability and therefore would be properly entitled to claim a refund of a portion of that amount when his state tax liability was only $810. Defendant claims the State's proper remedy is not to prosecute him for false statement, but rather to collect the withholding that his corporation improperly neglected to pay. His argument proceeds on the premise that he is just like any other employee in this situation, whose taxes were withheld by a company that never paid those withheld taxes over to the State.

14. We do not agree with Defendant's premise. It is uncontradicted that Defendant knew that the amounts withheld from his pay checks were never remitted to the State. Defendant admitted in his testimony that he used the amounts withheld from his pay checks for corporate purposes or for his own purposes by taking such amounts out of his firm and using the money as he wished. Under these circumstances, we disagree with Defendant's contention that this issue involves a question of law. The jury was free to find as a fact that the return was incorrectly prepared and thus amounted to false statement and fraud, particularly in light of the fact that Defendant was the sole person responsible for payment of state taxes collected from the Corporation's employees. *Cf. United States v. Rice,* 52 F.3d 843, 844 (10th Cir.1995) (false statement prosecution under U.S.C. § 7206 (1988) on similar facts).

### Issue 4

■ 15. Defendant claims that the trial court erred in refusing his instruction concerning his reliance on his previous accountant, Roberto Martinez, in preparing his returns. This defense went only to Count 6, which charged false statement and fraud. Defendant's requested instruction provided that Defendant introduced evidence that his return was prepared by his accountant and instructed the jury that it should find Defendant not guilty if it found that Defendant provided full and accurate information to the accountant concerning payment of withholding taxes to the State by the Corporation, and if it found that Defendant filed his return without having any reasonable basis to believe it was incorrect. Defendant relies on the federal cases of *United States v. Mitchell,* 495 F.2d 285 (4th Cir.1974), and *Bursten v. United States,* 395 F.2d 976 (5th Cir.1968), in support of this issue. Contrary to our discussion regarding the appropriate construction of our tax evasion statute, there is nothing in New Mexico law that would make a reliance-on-professional-advice defense unavailable under state law, and the State does not contend otherwise.

16. The State's argument is that Defendant is not entitled to an instruction that is not supported by the evidence. *See State v. Calvillo,* 110 N.M. 114, 120, 792 P.2d 1157, 1163 (Ct.App.), *cert. denied,* 110 N.M. 72, 792 P.2d 49 (1990); *Blackburn v. State,* 98 N.M. 34, 37, 644 P.2d 548, 551 (Ct.App.1982). However, the evidence in this case was conflicting regarding this defense.

17. The evidence in support of giving the defense instruction was Defendant's testimony that he gave the accountant all the information about both his personal income and his corporation's income and expenses. The State admits that Defendant gave the accountant all corporate records, thus enabling the accountant to realize, had he reviewed all the records, that the Corporation had never paid the withholding taxes to the State. Defendant testified that he relied on the accountant to properly prepare the return, that he turned over all his records to the accountant, that the accountant "does his mumbo jumbo stuff," and that Defendant, like the average taxpayer, signed the return that the accountant prepared. Thus, there was some evidence to support the defense. *See State v. Armijo*, 90 N.M. 614, 617, 566 P.2d 1152, 1155 (Ct.App.1977).

18. It was therefore for the jury to determine whether Defendant genuinely believed that the accountant reviewed the corporate records, realized that withholding had not been paid, and nonetheless (1) included the withholding as a credit on the return due to reasons having to do with tax law on which Defendant was entitled to rely or (2) included the withholding as a credit on the return, which Defendant did not realize because of his reliance on the accountant. However, we must still determine whether Defendant's entitlement to his requested instruction rose to the level of reversible error.

 19. At least one federal circuit has held that it is not reversible error to fail to give a reliance-on-professional-advice instruction when the jury is otherwise adequately instructed on the knowledge or intent element that the defense theory rebuts. *United States v. Dorotich*, 900 F.2d 192, 194 (9th Cir.1990). Our Supreme Court has held to a like effect under analogous circumstances. *See State v. Bunce*, 116 N.M. 284, 287–89, 861 P.2d 965, 968–70 (1993) (error to fail to give mistake-of-fact instruction when element of fraudulent intent not otherwise covered by instructions given); *State v. Venegas*, 96 N.M. 61, 62–63, 628 P.2d 306, 307–08 (1981) (not reversible error to fail to give mistake-of-fact instruction when that concept is covered by other instructions).

20. In this case, the elements instruction for false statement and fraud required the jury to find that "[t]he defendant did not believe such Tax Return was true and correct as to every material matter." Thus, the jury was adequately instructed on the element of Defendant's knowledge or belief. Defendant's requested instruction simply repeated to the jury the idea that Defendant should not be convicted if he believed his return was correct. Accordingly, it was not reversible error to fail to give Defendant's requested instruction.

Conclusion

21. For all of the foregoing reasons as well as the discussion in the unpublished portion of the opinion, we affirm Defendant's convictions.

22. **IT IS SO ORDERED.**

FLORES and WECHSLER, JJ., concur.